## Commonwealth v. Petrusky et al.

*Criminal law—Evidence—Best evidence—Way-bill.*

1. On a trial of an indictment for stealing goods from a car in transit from a point in another state to a point in Pennsylvania, a way-bill serving to identify the goods is admissible in evidence as the best evidence, where it appears that the shipper of the goods and the clerk who made out the way-bill are beyond the jurisdiction, so that process would not compel their attendance in court, and their depositions would not be available in a criminal proceeding in Pennsylvania.

*Criminal law—New trial—Notice to Commonwealth—Rules of court.*

2. A motion for a new trial in a criminal case will not be considered, where notice of the motion was not served upon the Commonwealth within ten days after filing, as required by a rule of court.

Motion in arrest of judgment and for new trial. O. & T. Schuylkill Co., March T., 1923, No. 295.

*Cyrus M. Palmer,* District Attorney (with him *John F. Whalen*), for Commonwealth.

*R. A. Freiler,* for defendants.

KOCH, J., April 6, 1925. — The five men named above [Joseph Petrusky, Harry Downey, Joseph McAndrew, John Galina and James Buscavage] were indicted together on May 7, 1923, upon the three counts, namely: (1) Larceny, (2) entering with intent to steal, and (3) receiving stolen goods. Joseph Petrusky and Joseph McAndrew were tried at the September Term, 1924, and convicted on the counts charging larceny and entering with intent to steal. Harry Downey was tried at the March Term, 1925, and found guilty of receiving stolen goods. Galina and Buscavage are fugitives from justice. Petrusky and McAndrew filed a motion and reasons for a new trial, but they failed to serve the same on the Commonwealth within ten days after filing, as required by section 4 of our rule of court No. 34 relative to new trials. That motion may, therefore, be considered as dismissed.

But we deferred sentence of Petrusky and McAndrew for the time being so that we might hear counsel on a similar motion, if made, after the conviction of any or all of the other defendants, because we are not disposed to hold Petrusky and McAndrew if the same evidence upon which they were convicted is not sufficient to hold any of the other defendants after their conviction by a jury. Harry Downey has now been convicted and his motion for a new trial is before us.

The reasons in support of the motion in arrest of judgment and for a new trial for Harry Downey may be resolved into this: That the evidence is not sufficient to hold Harry Downey, it being substantially the same evidence upon which Petrusky and McAndrew were convicted.

We must assume that, under the evidence, the jury found, and were warranted in finding, the facts hereinafter stated. On Jan. 22, 1923, at about 2 P. M., there was delivered by the New York Central Railroad Company to

the Philadelphia & Reading Railway Company, at Newberry Junction in this State, a refrigerating car of the former company bearing No. 152530. The car had come to Newberry Junction over said New York Central Railroad from Chicago. The seal clerk of the Philadelphia & Reading Railway Company at Newberry Junction inspected the car upon its arrival there and found the doors closed and the seals intact. The car was destined for Philadelphia and it was taken from Newberry Junction in a fast freight train of the Philadelphia & Reading Railway Company in the early afternoon of the following day. When the freight train arrived at Tamaqua, in this county, between 8 and 9 o'clock P. M., on its way to Philadelphia on Jan. 23, 1923, one of the inspectors at Tamaqua found that the seal on the eastern side of the car was missing and that the door was open. The inspector closed the door and resealed the car, and in due course the car arrived in Philadelphia. Upon being opened in Philadelphia, it was found that three cases of a shipment of 161 cases of eggs in said car to Nice Schreiber Company at Philadelphia were missing. On each end of each crate or case of eggs in said car was plainly stenciled "2254, Nice Schreiber Company, Philadelphia." The way-bill covering the shipment in said car from Chicago to Philadelphia was offered in evidence and received over the objection of the defendant's counsel, the objection being that the way-bill was without oral testimony for its support by those who loaded the car and made up the way-bill in Chicago. The way-bill described the shipment as being 161 cases of fresh eggs, whereas only 158 cases were found in the car when it arrived at its destination in Philadelphia. The way-bill showed that the shippers in this case were Schermerhorn and Shotwell, and the consignees were Nice Schreiber Company, Philadelphia.

A. P. Stofko, a police officer of the Philadelphia & Reading Railway Company at Tamaqua, having been informed of the shortage in the egg shipment, and acting upon other information which created suspicion, on Jan. 26, 1923, went with several other police officers to search a house or shack in the village of Pattersonville, located in this county on the line of the Philadelphia & Reading Railway Company and lying between Newberry Junction and Tamaqua. The said shack was then unoccupied, as the occupants had been arrested and taken into custody two days previously upon charges unrelated to those in this case. The parties so arrested were Petrusky, McAndrew and Galina, three of the defendants named in this indictment, and Mary Verchomsky, a female child fourteen years old. At the shack, Stufko and the policemen who were with him found a fifty-pound lard can filled with eggs, also some eggs in a bowl and many egg-shells on the cellar floor, two ends of an egg case stenciled "2254, Nice Schreiber, Philadelphia," also some other parts of an egg case and a rope ladder with eight iron rungs and two large iron hooks at one end of the ladder, which was enclosed in a burlap bag.

Mary Verchomsky was the most important witness for the Commonwealth at the two trials. From her testimony the jury were warranted in finding that on Dec. 23, 1922, Mary had been taken to said shack by Petrusky and McAndrew and had been detained there until about 7 o'clock P. M. on Jan. 24, 1923, when she, McAndrew, Petrusky and Galina were arrested and taken to Shenandoah; that on the day prior to said arrest, McAndrew and Downey came to the shack with a motor-car and said to Petrusky they were going to go to Ringtown for eggs; that they used to bring coffee, sugar and canned goods in boxes to the shack; that Petrusky, Downey and McAndrew left the shack with the latter's motor-truck on the evening of Jan. 23, 1923, and that when they returned that evening Petrusky brought a case of eggs into the shack; that McAndrew and Downey lived in Shenandoah at the time and left

the shack after they had brought eggs there; that when the three left for the eggs that evening they took with them the bag with the rope ladder, and when Mary Verchomsky asked what was in the bag they told her it was none of her business; that when they returned with the eggs they told Mary they got the eggs at Ringtown.

Were we in error in receiving the way-bill in evidence? We think not. The parties in Chicago who put the eggs into the refrigerator car there and the clerk who made up the way-bill are beyond our jurisdiction and our process would not compel their attendance at court. Nor would their depositions be available on the part of the Commonwealth in a criminal court in this State. The way-bill itself was, therefore, under the circumstances, the best evidence of what it purports to show, and it was at least *prima facie* evidence of the truth of the data upon its face. We think the jury was clearly warranted in believing that three cases of eggs were taken from that car and that one case was taken to Petrusky's shack and that the other two cases were taken to Shenandoah or elsewhere by Downey and McAndrew in the latter's motor-truck in the night-time of Jan. 23, 1923. Thereby the *corpus delicti* is proven and the guilt of Harry Downey is established. It was exclusively within the jury's province to find of which count the defendant is guilty and we feel that their verdict should not be set aside.

And now, April 6, 1925, the motion in arrest of judgment and for a new trial is refused and the defendant is directed to appear before the court for sentence.

From M. M. Burke, Shenandoah, Pa.